On May 27, 1980, the appellant-defendant, Donald L. Terrell, entered into a retail installment contract and security agreement with Trulove Equipment Company (hereinafter "Trulove"), for the purchase of a John Deere tractor and a riding lawnmower. The instrument was assigned to appellee-plaintiff, John Deere Company (hereinafter "John Deere").
Terrell defaulted on his payments and the farm equipment was repossessed and sold at public sale for $23,000.00, leaving an alleged deficiency of $13,276.47. On May 19, 1983, John Deere filed an action against Terrell, seeking a judgment for the *Page 919 
deficiency that remained after the sale of the farm equipment, interest, attorney's fees, and costs. In his answer, Terrell denied all allegations of John Deere's complaint and asserted as a defense that the sale was not commercially reasonable.
The case was tried before a jury, beginning February 13, 1985. Extensive evidence regarding the sale of the equipment was presented at trial. The jury returned a verdict for John Deere for $21,721.71, and judgment was entered accordingly. Terrell filed a motion for a new trial, which was overruled by operation of law. Ala.R.Civ.P. 59.1. Terrell then filed a timely appeal to this Court.
The issue is whether the trial court erred to reversal by instructing the jury "that if you believe the evidence in this case, you must find for the plaintiff." Terrell asserts that the above portion of the trial court's oral charge was the "affirmative charge with hypothesis," which, in effect, was a directed verdict for John Deere. Terrell argues that a directed verdict was improper because, he says he presented at least a scintilla of evidence on the disputed issues of the amount owed to John Deere on his debt and the commercial reasonableness of the sale of the repossessed farm equipment. On the other hand, John Deere argues that Terrell failed to present a scintilla of evidence on these issues, and, therefore, that the directed verdict was proper.
The committee comments to Rule 50, Ala.R.Civ.P., discuss the affirmative charge with hypothesis:
 Where the party having the burden of proof has made out his case by uncontradicted testimony, the case is sent to the jury but with a special direction that "if the jury believe the evidence, it must find for the plaintiff." Allen v. Southern Coal Coke Co., 205 Ala. 363, 87 So. 562 (1921). In federal courts and in most states, the case is not submitted to the jury under the circumstances described; instead the court directs a verdict. Rule 50 (a) last sentence clearly provides that the order granting a motion for a directed verdict is effective without any assent of the jury. This eliminates the illogical ritual required under former practice.
In the instant case, it is evident that the affirmative charge with hypothesis was given by the trial court. Therefore, the issue becomes whether the trial court erred by directing a verdict for John Deere.
On appeal from the grant of directed verdict, we must review the evidence in the light most favorable to the nonmoving party, and we must reverse the trial court's judgment if any interpretation of the evidence can support a conclusion in the nonmoving party's favor. Rose v. Miller Co., 432 So.2d 1237
(Ala. 1983). Viewing the record in the instant case in the light most favorable to Terrell, we are of the opinion that there was no evidence by which the jury could have concluded, as Terrell contended, that the sale of the farm equipment was commercially unreasonable or that his debt to John Deere was extinguished by John Deere's chargeback against Trulove's deficiency account.
This Court in First National Bank of Dothan v. Rikki TikkiTavi Inc., 445 So.2d 889, 890 (Ala. 1984), made the following observations regarding the issue of commercial reasonableness in the sale of collateral:
 Code 1975, § 7-9-504, authorizes a secured creditor to sell, lease, or otherwise dispose of any collateral in order to cover the balance due on a promissory note in the event of default by the debtor. "The principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith (Section 7-1-203) and in a commercially reasonable manner. See Section 7-9-504." Code 1975, § 7-9-507, Comment 1. "[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Code 1975, § 7-9-504 (3). The sufficiency of the price obtained at a sale authorized by Code 1975, § 7-9-504, is one of the "terms" of the disposition, and is relevant to whether the sale was commercially reasonable. . . .
. . . . *Page 920 
 . . . However, disparity in price between the market value of the collateral and the price for which it actually sold is not "of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Code 1975, § 7-9-507 (2). "If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." Id.
It follows that, in order to prove a commercially unreasonable disposition of collateral, the party alleging it must present evidence of what constitutes reasonable commercial practices, usual manner of sale, and what the current market price was for the collateral at the time of the sale. In addition, the party must present some evidence that the disposition at issue failed to conform to one or more of the above requirements.
Terrell raises three grounds in support of his contention that the sale of the farm equipment in this case was not commercially reasonable: (1) a disparity in the price between the market value of the collateral at the time of sale and the price for which it was actually sold; (2) notice of public auction of the equipment was not placed in a newspaper published in the county in which the sale occurred, but, rather, was placed in a newspaper published in an adjoining county which was circulated in the county in which the sale occurred; and (3) John Deere solicited bids from three dealers prior to the public auction and one of these bidders, Trulove, purchased the equipment at auction for its pre-auction bid amount when no higher bid was received at the auction. Despite these allegations, Terrell failed to present any evidence of the fair market value of the collateral at the time of sale, except the testimony of Terrell that he thought the sale should have brought $40,000.00. Additionally, Terrell failed to present any evidence that John Deere's method of giving notice of the sale or its solicitation of pre-sale bids was not in conformity with reasonable commercial practices among farm equipment dealers or was otherwise unusual. See Code 1975, § 7-9-507 (2). Therefore, the only credible evidence on this issue before the jury was that the sale was commercially reasonable. There was no evidence to support an inference otherwise and, therefore, the directed verdict was proper.
Terrell also argues that he presented evidence that his debt to John Deere had been paid by Trulove because John Deere charged the deficiency remaining after the sale to Trulove's reserve account with John Deere. Terrell contends that because of this charge back arrangement, his debt was owed to Trulove, not John Deere, and that the jury should have been allowed to decide whether Terrell was indebted to John Deere for any amount. We disagree. Although there was testimony at trial that John Deere charged the deficiency resulting from the sale of the farm equipment to Trulove's reserve account, there was no evidence that John Deere had received payment from Trulove. In fact, there was evidence that the reserve account was insufficient to cover the amount of the deficiency. There was no evidence upon which the jury could have inferred that Terrell's debt to John Deere had been paid by Trulove. Ergo, the trial court's instruction to the jury that "the measure of . . . damages . . . would be the difference in what was owed under the contract and the amount that was received from the sale of the equipment," plus interest and attorney's fees, was a correct charge under the facts of this case.
Finally, Terrell contends that the jury's verdict of $21,721.71 for the deficiency, interest, and attorney's fees was not supported by the evidence. Our review of the entire record compels us to conclude that there was ample evidence to support the jury's award. *Page 921 
The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, and STEAGALL, JJ., concur.